Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3455 | **DATE** | 3/27/2002 |
| **CASE TITLE** | Atlantic Mutual Insurance vs. Chicago Diversified Products | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  CDP's third party complaint against the Village of Winnetka fails to state a claim upon which relief may be granted. The Court therefore grants Winnetka's motion to dismiss the third party complaint (12-1). The case is set for a status hearing on 4/17/02 at 9:30 a.m. for a report on the progress of settlement negotiations. The parties are reminded of the previously-set discovery cutoff date of 10/1/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 0 1 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 15 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | APR 0 1 2002 | |
| | | courtroom deputy's initials | date mailed notice | |
| OR | | | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ATLANTIC MUTUAL INSURANCE CO., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 01 C 3455 |
| CHICAGO DIVERSIFIED PRODUCTS, INC. and TAKEOFF, INC., | ) |
| Defendants. | ) |
| CHICAGO DIVERSIFIED PRODUCTS, INC., | ) |
| Third Party Plaintiff, | ) |
| vs. | ) |
| VILLAGE OF WINNETKA, | ) |
| Third Party Defendant. | ) |

DOCKETED
APR 01 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Village of Winnetka has moved to dismiss the third party complaint of Chicago Diversified Products, Inc. For the reasons stated below, the Court grants Winnetka's motion.

### Background

This case arises from a fire at a home in Winnetka, Illinois on May 10, 1999. Employees of Chicago Diversified Products, Inc. (CDP) were stripping paint at the home using a product called Takeoff 2000. The fire allegedly started when a CDP employee unplugged an electrical cord from an outlet, generating an electrical arc that ignited vapors from the Takeoff 2000. The

15

Winnetka Fire Department arrived on the scene to extinguish the fire. However, two days after the fire ostensibly had been extinguished, a second fire occurred. This fire is claimed to have been caused by smoldering cellulose insulation that the fire fighters allegedly had failed to remove completely.

After paying a claim on the homeowners' insurance policy, the insurer, Atlantic Mutual, filed suit (as subrogee of the rights of the homeowners) against CDP, alleging negligence in the paint stripping work and breach of contract for CDP's alleged failure to maintain a safe work area. Atlantic Mutual also sued the manufacturer of Takeoff 2000 for its alleged failure properly to label the product.

CDP filed a third party complaint for contribution against the Village of Winnetka. CDP alleges that the Winnetka Fire Department "had a duty to exercise reasonable care in fighting the first fire" and that it breached that duty and was "guilty of willful and wanton conduct" by failing to remove all the insulation. CDP contends that this act or omission caused or contributed to plaintiff's damages and that Winnetka should be held wholly or partly liable for any damage award to the plaintiff. Winnetka has moved to dismiss CDP's third party claim for failure to state a claim upon which relief may be granted.

**Analysis**

A court may dismiss a complaint for failure to state a claim only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). In deciding a motion to dismiss, we accept as true the plaintiff's factual allegations and draw reasonable inferences in the plaintiff's favor. *Pierce v. Village of Divernon*, 17 F.3d 1074, 1076-77 (7th Cir. 1994).

In its motion to dismiss, Winnetka argues that it is immune from any liability arising from the alleged failure to remove the insulation, by virtue of section 5-102 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, which provides as follows:

> Neither a local public entity that has undertaken to provide fire protection service nor any of its employees is liable for an injury resulting from the failure to suppress or contain a fire or from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities.

745 ILCS 10/5-102. CDP, by contrast, argues that the case is governed by section 5-103(b) of the Act, which provides as follows:

> Neither a local public entity nor a public employee acting in the scope of his employment, is liable for an injury caused by an act or omission of a public employee while engaged in fighting a fire. However, this Section shall not apply if the injury is caused by the willful and wanton conduct of the public employee.

745 ILCS 10/5-103(b). According to CDP, the third party complaint's allegation that the failure to remove the insulation was "willful and wanton" is sufficient to invoke section 5-103(b)'s exception.

Our task is to interpret and reconcile sections 5-102 and 5-103(b) and in doing so, to attempt to predict how the Illinois Supreme Court would decide the issue if asked. *See, e.g., Allen v. Transamerica Insurance Co.*, 115 F.3d 1305, 1309 (7th Cir. 1997).

In construing the Tort Immunity Act, we must of course ascertain and give effect to the intention of the Illinois legislature, deriving this if possible from the language of the Act. The Act's provisions must be read as a whole, construing each provision in light of the other pertinent provisions. *See, e.g., Burnett v. Zion Park District*, 171 Ill. 2d 378, 388-89, 665 N.E.2d 808, 813 (1996). The public policy behind the Act's provisions conferring immunity in connection with the providing of fire protection services has been described as follows:

> If liable for negligence in this case the city must be held liable for every neglect of that [fire] department, and every employee connected with it when acting within the line of duty. It would subject the city to the opinions of witnesses and jurors whether sufficient dispatch was used in reaching the fire after the alarm was given; whether the employees had used the requisite skill for its extinguishment; whether a sufficient force had been provided to secure safety; whether the city had provided proper engines and other appliances to answer the demands of the hazards of fire in the city; and many other things might be named that would form the subject of legal controversy. To permit recoveries to he had for all such and other acts would virtually render the city an insurer of every person's property within the limits of its jurisdiction. It would assuredly become too [burdensome] to be borne by the people of any large city, where loss by fire is annually counted by the hundreds of thousands, if not by the millions. ... To allow recoveries for the negligence of the fire department would almost certainly subject property holders to as great, if not greater, [burdens] than are suffered from the damages from fire. Sound public policy would forbid it, if it was not prohibited by authority.

*Martin v. Lion Uniform Co.,* 180 Ill. App. 3d 955, 959, 536 N.E.2d 763, 738 (1989) (quoting *Roumbos v. City of Chicago,* 332 Ill. 70, 81, 163 N.E. 361, 366 (1928), in turn quoting *Wilcox v. City of Chicago,* 107 Ill. 334, 339 (1883)).

There is no question that the injury in this case – which arises from Winnetka's alleged failure to suppress the first fire – falls squarely within the scope of section 5-102, which immunizes injuries from "failure to suppress or contain a fire." CDP argues, however, that the injury is also "an injury caused by an act or omission of a public employee while engaged in fighting a fire," as described in section 5-103(b), and that that section's exception for "willful and wanton conduct" even though no such exception appears in section 5-102. In short, CDP contends that both provisions cover the same subject area.

The Illinois Supreme Court has declared that a court is to presume "that two or more statutes which relate to one subject are governed by one spirit and policy, and that the legislature intended the statutes to be operative and harmonious. ... [S]tatutes relating to one subject must

4

be compared and so construed with reference to each other that effect may be given to all of the provisions of each, if it can fairly and reasonably be done." *Henrich v. Libertyville High School,* 186 Ill. 2d 381, 391-92, 712 N.E.2d 298, 304 (1998). If section 5-103(b) were read as broadly as CDP urges, section 5-102 would be superfluous in significant part. We have been given no basis to conclude that the Illinois legislature enacted a largely superfluous immunity provision. *See, e.g., Niven v. Siqueria,* 109 Ill. 2d 357, 365-67, 487 N.E.2d 937, 942-43 (1985) (court should not construe statute so as to make words or phrases superfluous, and it should not be presumed that the legislature intended a meaningless act in enacting a statute).

By its terms, section 5-102 was intended to address injuries caused by a municipality's failure to fight a fire, or its failure to extinguish a fire that it has attempted to extinguish. It omits any exception for willful and wanton conduct. In view of that omission, the legislature's evident intention was to immunize both negligent and willful and wanton conduct. *See Barnett v. Zion Park District,* 171 Ill. 2d 378, 391-92, 665 N.E.2d 808, 814-15 (1996). When a statute confers immunity of that sort, Illinois courts decline to apply other statutory provisions to limit the immunity, for to do so would defeat the intent of the legislature. *Id.* (declining to read another statute's exception for "willful and wanton" misconduct into a statute providing blanket immunity); *Grandalski v. Lyons Township High School District,* 305 Ill. App. 3d 1, 6-7, 711 N.E.2d 372, 376-77 (1999). And this case is even a stronger one than *Barnett* and *Grandalski* for not reading a "willful and wanton" exception into the pertinent statute, for in those cases the courts were dealing with statutory provisions that provided immunity "except as otherwise provided by" the particular legislative act at issue – an exception that does not appear in section 5-102. In sum, it seems relatively clear that in adopting the broad immunity conferred in section

5-102 without providing for exceptions, the legislature made a decision that even a reckless failure to extinguish a fire should not give rise to liability.

In order to give full force and effect to both section 5-102 and section 5-103(b), those statutes must be read to cover different types of situations; we will not assume that the legislature enacted, at the same time, two sections intending for them to overlap significantly. The self-evident purpose of section 5-102 is to provide immunity for failure to put out a fire. By contrast, the apparent intent of section 5-103(b) is to provide immunity for injuries that might be inflicted by fire fighters in the course of trying to put out a fire. *Cf. Stubblefield v. City of Chicago*, 48 Ill. 2d 267, 269 N.E.2d 504 (1971) (injury caused when fire fighter lost control of fire hose which then struck plaintiff, who was watching the fire, was within the scope of section 5-103(b)). The latter section permits a suit when the fire fighter, while attempting to put out a fire, willfully and wantonly causes an injury; the former section precludes a suit no matter what the level of the fire fighter's or fire department's intent. In view of the purposes of the conferral of immunity as previously described, this is a rational distinction: in adopting section 5-102, the legislature presumably wanted to give fire departments a wide berth in attempting to perform their important public responsibilities without fear of suit every time they do not succeed. As the Seventh Circuit has stated, the Act was "'intended to provide blanket immunity in the specified area of fire protection ....'" *Pierce*, 17 F.3d at 1077 (quoting *Jackson v. Chicago Firefighters Union, Local No. 2*, 160 Ill. App. 3d 975, 980, 513 N.E.2d 1002, 1005 (1987)).

In this case, there is no question that Winnetka's putative liability arises from its alleged failure to extinguish a fire completely. As such, CDP's claim falls squarely within the scope of the immunity conferred by section 5-102. To read section 5-103(b) as CDP proposes – as

6

creating a "willful and wanton" exception even for cases within the core of section 5-102 –

would be to insert into the statute an exception that the legislature chose not to adopt.

### Conclusion

CDP's third party complaint against the Village of Winnetka fails to state a claim upon which relief may be granted. The Court therefore grants Winnetka's motion to dismiss the third party complaint [docket item 12-1]. The case is set for a status hearing on April 17, 2002 at 9:30 a.m. for a report on the progress of settlement negotiations. The parties are reminded of the previously-set discovery cutoff date of October 1, 2002.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 27, 2002